IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| IN RE: | * | |
| GEORGE THORNTON, JR. | * | Bankruptcy No. 23-12800 DER |
| | * | Chapter 13 |
| Debtor | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| | * |
| THE COMMUNITY DEVELOPMENT | * |
| ADMINISTRATION of the DEPARTMENT of | * |
| HOUSING AND COMMUNITY | * |
| DEVELOPMENT for the STATE of MARYLAND | * |
| 7800 Harkins Road | * |
| Lanham, MD  20706 | * |
| | * |
| Creditor/Movant | * |
| | * |
| v. | * |
| | * |
| GEORGE THORNTON, JR. | * |
| 2643 Liberty Parkway | * |
| Dundalk, MD  21222 | * |
| | * |
| Respondent | * |

## MOTION FOR RELIEF FROM AUTOMATIC STAY

The Community Development Administration of the Department of Housing and Community Development for the State of Maryland, by its undersigned counsel, moves that this Court grant relief from the automatic stay imposed by Title 11, U.S.C. Section 362(a), and as reasons therefor, states as follows:

1.    Jurisdiction of this action is founded upon Title 11 U.S.C. Section 362(a).

2.    That The Community Development Administration of the Department of Housing and Community Development for the State of Maryland ("CDA") is a secured creditor holding a first deed of trust on real property owned by Respondent, which property has the address of 2643 Liberty Parkway, Dundalk, Maryland 21222 as described in said first deed of trust dated July 2, 2008 and recorded in Liber 27205 at Page 543 among the Land Records for Baltimore County, Maryland, as modified by a Loan Modification Agreement dated November 1, 2010 (collectively, the "First Trust").  A copy of the First Trust is attached hereto as Exhibit A.

Law Offices

**HEISE
JORGENSEN &
STEFANELLI P.A.**

18310 Montgomery
Village Avenue
Suite 400
Gaithersburg, MD
20879
-------
(301) 977-8400

3.      That as of July 8, 2024, the total debt due on the First Trust indebtedness held by CDA, as referenced in Paragraph 2 above, was:

| | |
|---|---:|
| Principal Balance | $110,626.91 |
| Interest @ 5.35% (12/01/22 – 07/08/24) | 9,484.50 |
| Escrow Advances | 5,596.93 |
| Late Charges | 211.60 |
| NSF Fee | 15.00 |
| Recoverable Balance | 3,693.47 |
| Suspense Balance | (789.76) |
| Total Debt as of July 8, 2024 | **$128,838.65** |

4.      That payments of the indebtedness referenced in Paragraph 2 above are due monthly on the 1st day of the month, and that the Debtor has failed to make the following payments:

| | |
|---|---:|
| Post-petition Monthly Payments – | |
| May – July, 2024 (3 x $1,014.08) | $3,042.24 |
| Suspense Balance | (789.76) |
| Total Post-Petition Arrearage as of July 8, 2024 | **$2,252.48** |

5.      That CDA is a secured creditor holding a second deed of trust dated July 2, 2008 on property owned by the Debtor, George Thornton, Jr., which property has the address of 2643 Liberty Parkway, Dundalk, Maryland 21222, as described in said second deed of trust recorded in Liber 27205 at Page 563 among the Land Records for Baltimore County, Maryland, as modified by a Loan Modification Agreement dated November 1, 2010 (collectively, the "Second Trust"). A copy of the Second Trust is attached hereto as Exhibit B.

6.      That as of July 8, 2024, the total debt due on the Second Trust indebtedness held by CDA, as referenced in Paragraph 5 above, was:

| | |
|---|---:|
| Principal Balance | $23,211.95 |
| Interest @ 0.50% (02/01/21 – 07/08/24) | 398.70 |
| Late Charges | 96.64 |
| NSF Fee | 15.00 |
| Recoverable Balance | 6,652.16 |
| Suspense Balance | (28.33) |
| Total Debt as of July 8, 2024 | **$30,346.12** |

7.    That payments of the indebtedness referenced in Paragraph 5 above are due monthly on the 1st day of the month, and that the Debtor has failed to make the following payments:

|  |  |
|---|---|
| Post-petition Monthly Payments – | |
| December, 2023 – July, 2024 (8 x $75.48) | $ 603.84 |
| Suspense Balance | (28.33) |
| Total Post-Petition Arrearage as of July 8, 2024 | **$ 575.51** |

Debtor has failed to comply with the requirements of his Plan.

WHEREFORE, the premises considered, CDA moves that this Court grant relief from the automatic stay imposed by the aforesaid provisions of the Bankruptcy Code by terminating the stay as to the real property known as 2643 Liberty Parkway, Dundalk, Maryland 21222 so as to permit CDA to proceed with foreclosure thereon.

HEISE JORGENSEN & STEFANELLI P.A.

By:   /s/ Stephen B. Jackson
    Stephen B. Jackson, Federal Bar No. 22625
    Attorney for Movant
    18310 Montgomery Village Avenue, Suite 400
    Gaithersburg, MD 20910
    (301) 977-8400
    sjackson@heise-law.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 9th day of July, 2024, a copy of the foregoing Motion for Relief from Automatic Stay was served by first class mail, postage prepaid, upon the party whose name and address are listed below:

1.      George Thornton, Jr.
          2643 Liberty Parkway
          Dundalk, MD  21222

I HEREBY CERTIFY that on this 9th day of July, 2024, copies of the foregoing Motion for Relief from Automatic Stay were served electronically via ECF upon the parties whose names and addresses are listed below:

1.      Eric Steiner (eric@steinerlawgroup.com)
          Steiner Law Group, LLC
          P.O. Box 17598
          PMB 83805
          Baltimore, MD  21297

2.      Brian A. Tucci, Trustee (ECF@ch13balt.com)
          P.O. Box 1110
          Millersville, MD  21108

  /s/ Stephen B. Jackson
Stephen B. Jackson

| Name: | **GEORGE THORNTON JR** | | | | | Date: 7/8/2024 |
|---|---|---|---|---|---|---|
| Loan # | | | | **Filed Bankruptcy 04/24/23** | | Time: 18:06 |

| Date Posted to Account | Amount Paid | Post-Petition Due Date (Applied To) | Post-Petition Amount Due | Suspense Funds (+/-) | Suspense Balance | Comments |
|---|---|---|---|---|---|---|
| | | | | | $0.00 | |
| 06/23/23 | $ 960.59 | 05/01/23 | $960.59 | $ - | $ - | First pp pmt @: $960.59 5/1/2023 |
| 06/23/23 | $ 960.59 | 06/01/23 | $960.59 | $ - | $ - | |
| 07/10/23 | $ 960.59 | 07/01/23 | $960.59 | $ - | $ - | |
| 08/17/23 | $ 960.00 | | | $ 960.00 | $ 960.00 | |
| 09/18/23 | $ 960.59 | 08/01/23 | $960.59 | $ - | $ 960.00 | |
| 10/19/23 | $ 960.59 | 09/01/23 | $960.59 | $ - | $ 960.00 | |
| 11/29/23 | $ 960.59 | | | $ 960.59 | $ 1,920.59 | Reversed 10/1/2023 event @ $960.59 |
| 12/04/23 | $ (960.59) | | | $ (960.59) | $ 960.00 | NSF Reversal |
| 12/07/23 | $ 460.59 | 10/01/23 | $960.59 | $ (500.00) | $ 460.00 | |
| 12/07/23 | $ 500.00 | | | $ 500.00 | $ 960.00 | |
| 01/18/24 | $ 967.63 | 11/01/23 | $960.59 | $ 7.04 | $ 967.04 | |
| | | 12/01/23 | $960.59 | $ (960.59) | $ 6.45 | |
| 02/14/24 | $ 968.00 | | | $ 968.00 | $ 974.45 | |
| 03/07/24 | $ 967.63 | 01/01/24 | $1,014.08 | $ (46.45) | $ 928.00 | Pmt Change @: $1,014.08 1/1/2024 |
| 04/05/24 | $ 968.00 | 02/01/24 | $1,014.08 | $ (46.08) | $ 881.92 | |
| 05/07/24 | $ 968.00 | 03/01/24 | $1,014.08 | $ (46.08) | $ 835.84 | |
| 06/14/24 | $ 968.00 | 04/01/24 | $1,014.08 | $ (46.08) | $ 789.76 | |
| | | | | $ - | $ 789.76 | |
| | | | | | | |
| | | 05/01/24 | $1,014.08 | | | PP Due for: 5/1/2024 |
| | | 06/01/24 | $1,014.08 | | | |
| | | 07/01/24 | $1,014.08 | | | |
| | | Totals: | $3,042.24 | | | PP Delinquency: $3,042.24 |
| | | | | | | Less Suspense: $789.76 |
| | | | | | | Total needed to cure delinquency: $2,252.48 |

| Name: | **GEORGE THORNTON JR** | | | | | Date: 7/9/2024 |
|---|---|---|---|---|---|---|
| Loan # | | | | **Filed Bankruptcy 04/24/23** | | **Time: 10:49** |

| Date Posted to Account | Amount Paid | Post-Petition Due Date (Applied To) | Post-Petition Amount Due | Suspense Funds (+/-) | Suspense Balance | Comments |
|---|---|---|---|---|---|---|
| | | | | | $0.00 | |
| 06/22/23 | $ 39.41 | | | $ 39.41 | $ 39.41 | |
| 06/23/23 | $ 39.41 | 05/01/23 | $75.48 | $ (36.07) | $ 3.34 | First pp pmt @: $75.48 5/1/2023 |
| 07/10/23 | $ 39.41 | | | $ 39.41 | $ 42.75 | |
| 08/16/23 | $ 39.41 | 06/01/23 | $75.48 | $ (36.07) | $ 6.68 | |
| 09/18/23 | $ 39.41 | | | $ 39.41 | $ 46.09 | |
| 10/19/23 | $ 39.41 | 07/01/23 | $75.48 | $ (36.07) | $ 10.02 | |
| 11/29/23 | $ 39.41 | | | $ 39.41 | $ 49.43 | |
| 12/05/23 | $ (39.41) | | | $ (39.41) | $ 10.02 | NSF Reversal |
| 12/07/23 | $ 39.41 | | | $ 39.41 | $ 49.43 | |
| 01/17/24 | $ 46.45 | 08/01/23 | $75.48 | $ (29.03) | $ 20.40 | |
| 02/14/24 | $ 47.47 | | | $ 47.47 | $ 67.87 | |
| 03/07/24 | $ 46.45 | 09/01/23 | $75.48 | $ (29.03) | $ 38.84 | |
| 04/05/24 | $ 47.00 | 10/01/23 | $75.48 | $ (28.48) | $ 10.36 | |
| 05/07/24 | $ 46.45 | | | $ 46.45 | $ 56.81 | |
| 06/13/24 | $ 47.00 | 11/01/23 | $75.48 | $ (28.48) | $ 28.33 | |
| | | | | $ - | $ 28.33 | |
| | | | | | | |
| | | 12/01/23 | $75.48 | | | PP Due for: 12/1/2023 |
| | | 01/01/24 | $75.48 | | | |
| | | 02/01/24 | $75.48 | | | |
| | | 03/01/24 | $75.48 | | | |
| | | 04/01/24 | $75.48 | | | |
| | | 05/01/24 | $75.48 | | | |
| | | 06/01/24 | $75.48 | | | |
| | | 07/01/24 | $75.48 | | | |
| | | Totals: | $603.84 | | | PP Delinquency: $603.84 |
| | | | | | | Less Suspense: $28.33 |
| | | | | | | Total needed to cure delinquency: $575.51 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

0027205 543

Exhibit "A"

After Recording Return To:

Cole Title & Escrow, Inc.
1925 York Road
Timonium, MD 21093

```
IMP FD SURE $      20.00
RECORDING FEE      20.00
TOTAL              40.00
Reg# BA03    Rcpt # 43054
SM      CR    Blk # 1597
Jul 28, 2008        11:58 am
```

_____ [Space Above This Line For Recording Data] _____

## DEED OF TRUST

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **July 2, 2008**, together with all Riders to this document.

**(B) "Borrower"** is **George Thornton, Jr. and Jacqueline D. Thornton**. Borrower is the trustor under this Security Instrument.

**(C) "Lender"** is **Community Development Adminstration**. Lender is a organized and existing under the laws of **Maryland**. Lender's address is **100 Community Place Crownsville, Maryland 21032**. Lender is the beneficiary under this Security Instrument.

**(D) "Trustee"** is **Anthony J. Mohan and Mark S. Petrauskas**.

**(E) "Note"** means the promissory note signed by Borrower and dated **July 2, 2008**. The Note states that Borrower owes Lender **One Hundred Twenty-Two Thousand One Hundred Ninety Four Dollars** (U.S. **$122,194.00**) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **August 30, 2048**.

**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider       ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider               ☐ Planned Unit Development Rider ☐ Other(s) [specify]_____
☐ 1-4 Family Rider            ☐ Biweekly Payment Rider

**MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3021   1/01   *(page 1 of 16 pages)*

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0543, MSA_CE62_27060. Date available 07/31/2008. Printed 04/08/2019.

**0027205 544**

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0544, MSA_CE62_27060. Date available 07/31/2008. Printed 04/08/2019.

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)** **"Escrow Items"** means those items that are described in Section 3.

**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably

**MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          **Form 3021   1/01** *(page 2 of 16 pages)*

0027205 545

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0545, MSA_CE62_27060. Date available 07/31/2008. Printed 04/08/2019.

grants and conveys to Trustee, in trust, with power of sale, the following described property located in the _____ of _____:

       [Type of Recording Jurisdiction]           [Name of Recording Jurisdiction]

which currently has the address of       **2643 Liberty Parkway**

                                   [Street]

           **Dundalk , Maryland**       **21222**

           [City]                  [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    **1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is

**MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**    Form 3021  1/01  *(page 3 of 16 pages)*

0027205 546

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0546, MSA_CE62_27060. Date available 07/31/2018. Printed 04/08/2019.

drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any,

MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3021    1/01   *(page 4 of 16 pages)*

0027205 547

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0547, MSA_CE62_27060. Date available 07/31/2008. Printed 04/08/2019.

be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          Form 3021   1/01   *(page 5 of 16 pages)*

0027205 548

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0548, MSA_CE62_27060. Date available 07/31/2008. Printed 04/08/2019.

0027205 549

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0549, MSA_CE62_27060. Date available 07/31/2008. Printed 04/08/2019.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste

MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3021   1/01   *(page 7 of 16 pages)*

**0027205 550**

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0550, MSA_CE62_27060. Date available 07/31/2008. Printed 04/08/2019.

on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3021    1/01 *(page 8 of 16 pages)*

0027205 551

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0551, MSA_CE62_27060. Date available 07/31/2008. Printed 04/08/2019.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase**

0027205 552

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0552, MSA_CE62_27060. Date available 07/31/2008. Printed 04/08/2019.

the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of

MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3021   1/01  *(page 10 of 16 pages)*

0027205 553

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0553, MSA_CE62_27060. Date available 07/31/2008. Printed 04/08/2019.

the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the

MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3021   1/01   *(page 11 of 16 pages)*

0027205 554

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0554, MSA_CE62_27060. Date available 07/31/2008. Printed 04/08/2019.

charging of such fee.  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note).  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15.  Notices.**  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing.  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means.  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise.  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender.  Borrower shall promptly notify Lender of Borrower's change of address.  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure.  There may be only one designated notice address under this Security Instrument at any one time.  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower.  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender.  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16.  Governing Law; Severability; Rules of Construction.**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located.  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law.  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract.  In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17.  Borrower's Copy.**  Borrower shall be given one copy of the Note and of this Security Instrument.

**18.  Transfer of the Property or a Beneficial Interest in Borrower.**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property,

MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT·     Form 3021   1/01  *(page 12 of 16 pages)*

0027205 555

including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with

**MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          **Form 3021**   **1/01**   *(page 13 of 16 pages)*

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0555, MSA_CE62_27060. Date available 07/31/2008. Printed 04/08/2019.

0027205 556

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0556, MSA_CE62_27060. Date available 07/31/2008. Printed 04/08/2019.

the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3021   1/01  *(page 14 of 16 pages)*

0027205 557

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0557, MSA_CE62_27060. Date available 07/31/2008. Printed 04/08/2019.

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale, assent to decree, and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by Applicable Law. Trustee shall give notice of sale by public advertisement and by such other means as required by Applicable Law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale and by notice to any other persons as required by Applicable Law. Lender or its designee may purchase the Property at any sale.**

**Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of _____% of the gross sale price and reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**Borrower, in accordance with Title 14, Chapter 200 of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this Section 22 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender or Trustee, shall release this Security Instrument and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT       Form 3021   1/01   *(page 15 of 16 pages)*

0027205 558

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0558, MSA_CE62_27060. Date available 07/31/2008. Printed 04/08/2019.

**24. Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Possession of the Property.** Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to Section 22 of this Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____   X _____ (Seal)
                                       George Thornton, Jr.           - Borrower

_____   _____ (Seal)
                                       Jacqueline D. Thornton        - Borrower

_____   **[Space Below This Line for Acknowledgment]** _____

MARYLAND--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3021   1/01   *(page 16 of 16 pages)*

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0559, MSA_CE62_27060. Date available 07/31/2008. Printed 04/08/2019.

STATE OF MARYLAND, _Baltimore_ County ss:

    I HEREBY CERTIFY that on this 2nd day of July 08, 2008 me the subscriber, a Notary Public of the State of Maryland and for the    aforesaid, George Thornton, Jr. and Jacqueline D. Thornton personally appeared and, known to me or satisfactorily proven to be the persons whose names are subscribed to the within instrument and acknowledged the foregoing Deed of Trust to be his/her (their) Act.

    AS WITNESS, my hand and notarial seal.

My Commission Expires: _8/1/10_ _____   Notary Public _____

STATE OF MARYLAND, _Baltimore_ County, ss:

    I HEREBY CERTIFY, that on this ___ day of _July_, 20_08_ before me, the subscriber, a Notary Public of the State of _MD_ and for the County aforesaid, personally appeared _____, the agent of the party secured by this foregoing Deed of Trust, and made oath in due form of law that the consideration recited in said Deed of Trust is true and bona fide as therein set forth and that the actual sum of money advanced at the closing transaction by the secured party was paid over and disbursed by the secured party or parties to the Borrower or to the person responsible for disbursement of funds in the closing transaction or their respective agent at a time no later than the execution and delivery by the Borrower of this Deed of Trust; and also made oath that he/she is the agent of the party or parties secured and is duly authorized to make this affidavit.

    AS WITNESS, my hand and notarial seal.

My Commission Expires: _8/1/10_ _____   Notary Public _____

0027205 560

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0560, MSA_CE62_27060. Date available 07/31/2008. Printed 04/08/2019.

## EXHIBIT "A"

**File Number:** ████

BEGINNING for the same at a point on the northeast side of Liberty Parkway, said point of beginning situated 36 feet 2 inches southeasterly along the northeast side of Liberty Parkway from the southeast side of Kentway as shown on Block 4 of plat 4 Dundalk (said place of beginning also being in line with the center of the division wall between the properties known as 2641 and 2643 Liberty Parkway) and running thence from the said place of beginning along the northeast side of Liberty Parkway  south 20 degrees 22 minutes east 35 feet 5 inches; thence leaving Liberty Parkway and running north 69 degrees 38 minutes east 120 feet to the southwest side of a 14 foot alley there laid out; thence binding on the southwest side of said alley with the use thereof in common north 20 degrees 22 minutes west 35 feet 5 inches to a point in line with the center of  the division wall between the properties known as 2641 and 2643 Liberty parkway; thence leaving said alley and running to and through the center of said division wall south 69 degrees 38 minutes west 120 feet to the place of beginning.

THE IMPROVEMENTS THEREON BEING KNOWN AS NO. 2643 LIBERTY PARKWAY.

**Tax ID Number: 12-05-00-0050**

0027205 561

# TAX-EXEMPT FINANCING RIDER

THIS TAX-EXEMPT FINANCING RIDER is made this 2 day of July, 20___ and is incorporated into and shall be deemed to amend and supplement the Deed of Trust of same date herewith (hereinafter referred to as the "Security Instrument") given by George Thornton Jr + Jacquelins D. Thornton (the "Borrower") to secure Borrower's Note ("Note") of same date to Community Development Administration or any subsequent holder of the Note (the "Lender"), which Note is expected to be assigned to the Community Development Administration, and covering the property described in the Security Instrument and located at: 2643 Liberty Pkwy ccccy _____ [property address].

ADDITIONAL COVENANTS: In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree to amend Paragraph 9 of the Security Instrument, entitled "Grounds for Acceleration of Debt" by adding additional grounds for acceleration as follows, in the case of an FHA loan (or in the case of a VA or USDA/RD(RHS), privately insured loan, or other loan to amend the Security Instrument by incorporating the following additional language):

1.      Lender, or such of its successors or assigns as may, by separate instrument, assume responsibility for assuring compliance by the Borrower with the provisions of this Tax-Exempt Financing Rider, may require immediate payment in full of all sums secured by this Security Instrument if:

    (a)    All or part of the property is sold or otherwise transferred by Borrower to a purchaser or other transferee:

        (i)    who cannot reasonably be expected to occupy the property as a principal residence within a reasonable time after the sale or transfer, all as provided in Section 143(c) and (i)(2) of the Internal Revenue Code; or

        (ii)    who has had a present ownership interest in a principal residence during any part of the three-year period ending on the date of sale or transfer, all as provided in Section 143(d) and (i)(2) of the Internal Revenue Code (except that the language "100 percent" shall be substituted for "95 percent or more" where the latter appears in Section 143(d)(1); or

        (iii)    at an acquisition cost which is greater than 90 percent of the average area purchase price (greater than 110 percent for targeted area residences), all as provided in Section 143(e) and (i)(2) of the Internal Revenue Code; or

        (iv)    who has a gross family income in excess of the applicable percentage of the applicable median family income as provided in Sections 143(f) and (i)(2) of

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0561, MSA_CE62_27060. Date available 07/31/2008. Printed 04/08/2019.

0021205 562

Tax Exempt Financing Rider (112706)
R: Bonds/Single Family Forms/current

Page 2

the Internal Revenue Code; or

(v)     who fails, on or before the date of the proposed transfer, to submit to the Lender certifications, affidavits, and information concerning conditions 1(a)(i) through (iv) above, that confirm compliance with conditions 1(a)(i) through (iv) for purposes of the Internal Revenue Code.

(b)     Borrower fails to occupy the property described in the Security Instrument without Lender's prior written consent; or

(c)     Borrower omits or misrepresents a fact that is material with respect to the provisions of Section 143 of the Internal Revenue Code in any document executed by the Borrower in connection with an application for this Security Instrument.

2.     References are to the Internal Revenue Code as amended and in effect on the date of issuance of bonds, the proceeds of which are used to finance the loan secured by the Security Instrument or the purchase of the loan, and are deemed to include the implementing regulations.

3.     The Security Instrument is a purchase money deed of trust and secures, in whole or in part, the purchase money for the property described in the Security Instrument.

4.     **IN WITNESS WHEREOF,** Borrower accepts and agrees to the terms and provisions of this Tax-Exempt Financing Rider and has executed said Rider, on the day and year first above written.

WITNESS:

_____     By: _____ (SEAL)

By: _____ (SEAL)

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0562, MSA_CE62_27060. Date available 07/31/2008. Printed 04/08/2019.

Exempt from recordation and transfer taxes under Sections 12-108(a), 13-207(a)(1), and 13-402.1 of the Tax-Property Article of the Maryland Annotated Code.

Bogman Loan Number: ████████
CDA Loan Number: ████████

After recording please return to:
Department of Housing and Community Development
Single Family Collections
100 Community Place
Crownsville, Maryland 21032

## LOAN MODIFICATION AGREEMENT

THIS MODIFICATION IS TO BE EXECUTED IN DUPLICATE ORIGINALS:
ONE ORIGINAL IS TO BE AFFIXED TO THE ORIGINAL NOTE AND
ONE ORIGINAL IS TO BE RECORDED IN THE LAND RECORDS WHERE
THE SECURITY INSTRUMENT IS RECORDED

This Loan Modification Agreement ("Modification"), effective the 1st day of November, 2010, between George Thornton, Jr. (the "Borrower") and the Community Development Administration ("Lender"), an agency in the Division of Development Finance of the Maryland Department of Housing and Community Development (the Lender being the current holder of the Note) and Mark S. Petrauskas, Trustee. This Modification amends and supplements (1) the Note (the "Note") made by George Thornton, Jr. and Jacqueline D. Thornton (jointly and severally, the "Borrower"), dated July 2, 2008, in the original principal sum of U.S. $122,194.00, and (2) the Purchase Money Deed of Trust (the "Security Instrument"), recorded on July 28, 2008, in Liber 0027205, at Folio 543, of the Land Records of Baltimore County, Maryland. The Security Instrument, which was entered into as security for the performance of the Note, encumbers the real and personal property described in the Security Instrument (and defined in the Security Instrument as the "Property"), located at: 2643 Liberty Parkway, Dundalk, Maryland, the real property described as follows:

SEE THE ATTACHED LEGAL DESCRIPTION, EXHIBIT "A", ATTACHED HERETO AND MADE A PART HEREOF.

The Borrower has requested that the Lender modify the terms of the Note and Security Instrument, and the Lender has agreed pursuant to the terms and conditions herein. In consideration of the agreement herein, and other good and valuable consideration, the Borrower and Lender hereby agree to modify the terms of the Note and Security Instrument as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.      The Borrower represents that the Borrower is the occupant of the Property and is one and the individuals who executed the original instruments.

2.      The Borrower acknowledges that unpaid accrued interest in the total amount of $6,527.62 and an escrow shortage of $903.74 have been added to the indebtedness under the terms of the Note and Security Instrument, and that as of November 1, 2010, the amount, including the amounts which have been added to the indebtedness, payable under the Note and Security Instrument is U.S. $128,639.98 (the "Unpaid Principal Balance").

3.      The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender. Currently, under the Note, the stated interest rate is 5.875%. Under this Modification, the Interest Rate under the Note is reduced to 5.350%. Interest will be charged on the unpaid principal balance at the yearly rate of 5.350%, beginning November 1, 2010.

MMP - Loan Modification Agreement
THORNTON, George, Jr. -- Loan Mod. - Recast
s/collins/sfassetmanagement/thornton(101510)

Page 2

4.      The Borrower promises to make monthly payments of principal and interest of U.S. $661.28, and an escrow payment of U.S. $204.84, for a total payment of U.S. $866.12, beginning on the 1st day of November, 2010, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.

5.      Currently, under the Note, the Maturity Date is August 1, 2048. If on the Maturity Date, the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Modification, the Borrower will pay these amounts in full on the Maturity Date.

6.      The Borrower will make such payments at Bogman, Inc., located at 12301 Old Columbia Pike, Suite 200, Silver Spring, Maryland 20904 or at such other place as the Lender may require.

7.      Except as otherwise modified herein, the Borrower will comply with all other covenants, agreements, and requirements of the Note and the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument.

8.      Nothing in this Modification shall be understood or construed to be a novation, satisfaction or release in whole or in part of the Note and Security Instrument.  Except as otherwise specifically provided in this Modification, the Note and Security Instrument will remain unchanged and in full effect, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Modification.

9.      If one or more riders are executed by the Borrower and recorded together with this Modification, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Modification as if the rider(s) were a part of this Modification:

☒    Tax-Exempt Financing Rider

☐    Escrow Account Notice to Borrower

☐    Other: _____

10.     As modified by the Tax-Exempt Financing Rider, notwithstanding any other covenant, agreement or provision of the Note and Security Instrument, the Borrower agrees as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.**  If all or any part of the property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument.  However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of the Loan Modification Agreement.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice of demand on Borrower.

MMP - Loan Modification Agreement
THORNTON, George, Jr. – Loan Mod. - Recast
s/collins/sfassetmanagement/thornton(101510)

Page 3

**In witness whereof,** the parties have executed this Modification below.

**Borrower's Signature and Acknowledgements**

3-25-11

Date

_____ (SEAL)
George Thornton, Jr.

STATE OF MARYLAND, __Baltimore__ COUNTY, §:

I HEREBY CERTIFY, that on this **25** day of **March**, 20**11**, before me the subscriber, a Notary Public of the State of Maryland and for the County aforesaid, personally appeared George Thornton, Jr., known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

AS WITNESS:  my hand and notarial seal.

_____
Notary Public

My Commission Expires:
5-1-2011

**Lender's Signature and Acknowledgment**
Witness:

_____

By: _____
Jeanne M. Mullen
Authorized Officer

STATE OF MARYLAND, ANNE ARUNDEL COUNTY, §:

I HEREBY CERTIFY that on this **15** day of **December**, 20**10**, before me a Notary Public for the State and County described above, personally appeared Jeanne M. Mullen, known to me or satisfactorily proven to be the person whose name is subscribed to the foregoing instrument, who acknowledged that she is an Authorized Officer of the Community Development Administration, an agency in the Division of Development Finance of the Maryland Department of Housing and Community Development, that she has been duly authorized to execute, and has executed, such instrument on its behalf for the purposes set forth in it, and that such execution is its act and deed.

IN WITNESS WHEREOF, I have set my hand and Notarial Seal, the day and year first above written.

_____
Notary Public

My Commission Expires:
4/4/2014

MMP - Loan Modification Agreement
THORNTON, George, Jr. – Loan Mod. - Recast
s/collins/sfassetmanagement/thornton(101510)

Page 4

**Trustee Signature and Acknowledgment**

Witness:

By: _____
　　　Mark S. Petrauskas
　　　Trustee

STATE OF MARYLAND, ANNE ARUNDEL COUNTY, §:

I HEREBY CERTIFY that on this 18th day of October , 2010, before me a Notary Public for the State and County described above, personally appeared Mark S. Petrauskas, known to me or satisfactorily proven to be the person whose name is subscribed to the foregoing instrument, who acknowledged that he has executed such instrument as Trustee for the purposes set forth in it, and that such execution is his act and deed.

IN WITNESS WHEREOF, I have set my hand and Notarial Seal, the day and year first above written.

My Commission Expires:

4.4.2012

Notary Public　commissioned as
Angela Collins

ATTORNEY CERTIFICATION

This is to certify that this Modification has been prepared by or under the supervision of Mark S. Petrauskas, an attorney admitted to practice before the Court of Appeals of Maryland.

_____
Mark S. Petrauskas

MMP - Loan Modification Agreement
THORNTON, George, Jr. – Loan Mod. - Recast
s/collins/sfassetmanagement/thornton(101510)

Page 5

## EXHIBIT A
## PROPERTY DESCRIPTION

BEGINNING for the same at a point on the northeast side of Liberty Parkway, said point of beginning situated 36 feet 2 inches southeasterly along the northeast side of Liberty Parkway from the southeast side of Kentway as shown on Block 4 of plat 4 Dundalk (said place of beginning also being in line with the center of the division wall between the properties known as 2641 and 2643 Liberty Parkway) and running thence from the said place of beginning along the northeast side of Liberty Parkway south 20 degrees 22 minutes east 35 feet 5 inches; thence leaving Liberty Parkway and running north 69 degrees 38 minutes east 120 feet to the southwest side of a 14 foot alley there laid out; thence binding on the southwest side of said alley with the use thereof in common north 20 degrees 22 minutes west 35 feet 5 inches to a point in line with the center of the division wall between the properties known as 2641 and 2643 Liberty parkway; thence leaving said alley and running to and through the center of said division wall south 69 degrees 38 minutes west 120 feet to the place of beginning.

THE IMPROVEMENTS THEREON BEING KNOWN AS NO. 2643 LIBERTY PARKWAY.

**Tax ID Number: 12-05-00-0050**

## TAX-EXEMPT FINANCING RIDER

## (FOR LOAN MODIFICATION AGREEMENT)

THIS TAX-EXEMPT FINANCING RIDER is made as of the 1st day of November, 2010, and is incorporated into and shall be deemed to amend and supplement the Loan Modification Agreement of same date herewith made by George Thorton, Jr. (the "Borrower") and the Community Development Administration or any subsequent holder of the Note (the "Lender"), and covering the property described in the Loan Modification Agreement and located at: 2643 Liberty Parkway, Dundalk, Maryland.

Notwithstanding any other covenant, agreement or provision of the Note, the Security Instrument or the Loan Modification Agreement, the Borrower covenants and agrees that Paragraph 22 of the Security Instrument, entitled "Acceleration; Remedies" is amended by adding additional grounds for acceleration and remedies as follows:

1.     Lender, or such of its successors or assigns as may, by separate instrument, assume responsibility for assuring compliance by the Borrower with the provisions of this Tax-Exempt Financing Rider, may require immediate payment in full of all sums secured by the Security Instrument, as modified by the Loan Modification Agreement, if:

(a)     All or part of the property is sold or otherwise transferred by Borrower to a purchaser or other transferee:

 (i)     who cannot reasonably be expected to occupy the property as a principal residence within a reasonable time after the sale or transfer, all as provided in Section 143(c) and (i)(2) of the Internal Revenue Code; or

 (ii)     who has had a present ownership interest in a principal residence during any part of the three-year period ending on the date of sale or transfer, all as provided in Section 143(d) and (i)(2) of the Internal Revenue Code (except that the language "100 percent" shall be substituted for "95 percent or more" where the latter appears in Section 143(d)(1); or

 (iii)     at an acquisition cost which is greater than 90 percent of the average area purchase price (greater than 110 percent for targeted area residences), all as provided in Section 143(e) and (i)(2) of the Internal Revenue Code; or

 (iv)     who has a gross family income in excess of the applicable percentage of the applicable median family income as provided in Sections 143(f) and (i)(2) of the Internal Revenue Code; or

 (v)     who fails, on or before the date of the proposed transfer, to submit to the Lender certifications, affidavits, and information concerning conditions 1(a)(i) through (iv) above, that confirm compliance with conditions 1(a)(i) through (iv) for purposes of the Internal Revenue Code.

(b)     Borrower fails to occupy the property described in the Security Instrument without Lender's prior written consent; or

(c)     Borrower omits or misrepresents a material fact with respect to the provisions of Section

MMP - Loan Mod - Tax Exempt Financing ..er
THORTON, George, Jr. – Loan Mod.- Recast
s:collins/sfassetmanagement/thornton(101510)

Page 2

143 of the Internal Revenue Code in any document executed by the borrower in connection with an application for the loan or loan modification evidenced by the Note, the Security Instrument, and the Loan Modification Agreement.

2.    References are to the 1986 Internal Revenue Code as amended and in effect on the date of issuance of bonds, the proceeds of which were used to finance the loan secured by the Security Instrument, as modified by the Loan Modification Agreement, and are deemed to include the implementing regulations.

**IN WITNESS WHEREOF,** Borrower accepts and agrees to the terms and provisions of this Tax-Exempt Financing Rider and has executed said Rider, on the day and year first above written.

WITNESS:

By:_____(SEAL)
George Thornton, Jr.

STATE OF MARYLAND, _____ COUNTY, §:

I HEREBY CERTIFY, that on this __ day of _____, 20__, before me the subscriber, a Notary Public of the State of Maryland and for the County aforesaid, personally appeared George Thornton, Jr., known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledge that he executed the same for the purposes therein contained.

AS WITNESS:  my hand and notarial seal.

_____
Notary Public

My Commission Expires:
_____

Thornton, George Jr, 

# NOTE

| July 2, 2008 | | Dundalk | Maryland |
|---|---|---|---|
| [Date] | | [City] | [State] |

**2643 Liberty Parkway**
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. **$122,194.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is **Community Development Association**. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **5.875%**.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

### (A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **September, 2008**. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on AUGUST 30 , 20 48, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **Bogman, Inc. 12301 Old Columbia Pike Suite 200 Silver Spring, Md. 20904** or at a different place if required by the Note Holder.

### (B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. **$661.71**.

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.   BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)   Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be **4%** of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.

### (B)   Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)   Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount.  That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D)   No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)   Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law.  Those expenses include, for example, reasonable attorneys' fees.

## 7.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed.  Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things.  Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note.  The Note Holder may enforce its rights under this Note against each person individually or against all of us together.  This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.   WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor.  "Presentment" means the right to require the Note Holder to demand payment of amounts due.  "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.   UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note.  Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

0027205 563

Record and Return To:
Maryland Department of Housing and Community
100 Community Place
Crownsville, Maryland 21032-2023
Attention: Homeownership Programs (MHFP/PIRL)

Exhibit "B"

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0563, MSA_CE62_27060. Date available 07/31/2008. Printed 10/29/2020.

Tax Identification # 12-05-000050
Parcel Identification #

EXEMPT FROM RECORDATION AND TRANSFER TAXES
Sections 12-108(a) and 13-207(a)(1), Tax Property Article

DEED OF TRUST

```
IMP FD SURE $        20.00
RECORDING FEE        20.00
TOTAL                40.00
Rec# BA03    Rcpt # 43064
SM    CR     Blk # 1598
```

THIS DEED OF TRUST is made this **2**nd day of **July, 2008** by and between the Grantor, **George Thornton, Jr. and Jacqueline D. Thornton** (the "Borrower"), **Anthony J. Mohan and Mark S. Petrauskas** (the "Trustees"), for the benefit of the MARYLAND DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT, a principal department of the government of the State of Maryland (the "Beneficiary" or "Lender"), having an address at 100 Community Place, Crownsville, Maryland 21032.

WITNESSETH, THAT WHEREAS the Borrower is justly indebted to Lender in the principal amount of **Thirty Thousand Five hundred Forty-Nine Dollars ($30,549.00)** for which amount the Borrower has signed and delivered a note of even date herewith (herein called the "Note") payable to the order of the Lender, with interest thereon and providing for monthly installments of principal and interest; and

WHEREAS, Borrower desires to secure to the Lender the full and punctual payment of that debt and interest thereon, and the performance of the covenants herein contained, as well as any and all renewals or extensions of the Note, and interest thereon, and to secure to the holder(s) of the Note and the Trustees for all sums advanced by them (or on their behalf) hereunder; and

WHEREAS, this Deed of Trust secures the repayment of all or part of the purchase price of the Property described below;

WHEREAS, the loan evidenced by the Note and secured by this Deed of Trust is a preferred interest rate loan under the Lender's Maryland Home Financing Program, as set forth in the Housing and Community Development Article, Title 4, Subtitle 8 of the Maryland Annotated Code, as amended, and COMAR 05.03.01 as amended.

NOW, THEREFORE, Borrower, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants, conveys/assigns in trust to Trustees, in fee simple/subject to the annual ground rent, if applicable, the following described property located in the County of **Baltimore**, Maryland, to wit: which has the address **2643 Liberty Parkway Dundalk, Maryland 21222** (herein "Property Address"), as more fully described Exhibit A attached to this Deed of Trust;

TOGETHER with all the improvements now or hereafter erected on the property, and all leases, tenancies, easements, rights, appurtenances, rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), royalties, mineral, oil and gas rights and profits, water, water rights, and water stock, and all fixtures now or hereafter attached to the property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the property covered by this Deed of Trust; and any and all awards made with respect to the mortgaged premises by any governmental or other lawful authorities for taking by eminent domain the whole or any part of said premises, and all of the foregoing, and any and all sums payable under all policies of insurance with respect to the mortgaged premises; all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are herein referred to as the "Property";

TO SECURE to Lender (a) the timely repayment of the Note and any extensions, renewals or modifications of the Note; (b) the payment of all other sums, with interest thereon, advanced according to this Deed of Trust to protect

0027205 564

and (c) the timely repayment of any re-advances and future advances, with interest thereon, made to Borrower by Lender pursuant to paragraph 24 hereof (herein "Future Advances").

TO HAVE AND TO HOLD the Property in fee simple and if applicable for all the term of years yet to come and unexpired therein with the benefit of renewal, subject to the payment of the annual ground rent of N/ADollars ($N/A), payable semi annually on the N/Aday of N/A in each and every year.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property, that the Property is unencumbered, and that Borrower will warrant and defend specially the title to the Property against all claims and demands and will execute such further assurances of the same as may be requisite.

BORROWER AND LENDER COVENANT AND AGREE AS FOLLOWS:

1.      <u>Payment of Principal and Interest</u>.  Borrower shall promptly pay when due the principal of and interest on the indebtedness evidenced by the Note, any late charges as provided in the Note, and the principal of and interest on any Future Advances secured by this Deed of Trust.

2.      <u>Funds for Taxes and Insurance</u>.  Unless Borrower is required by a superior lien holder to make the following payments to the superior lien holder, subject to applicable law, Borrower shall pay to Lender on the day monthly installments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to: (a) one-twelfth of the yearly taxes and assessments, water and sewer charges and other public and quasi-public dues and charges, and the ground rents on the Property, if any; plus (b) one-twelfth of yearly premium on the policies of fire and extended coverage insurance; plus (c) one-twelfth of yearly condominium or homeownership fees, if any, and unless otherwise directed by Lender (such taxes, assessments, charges, premiums, rents and fees being called collectively "Assessments"), all as reasonably estimated initially and from time to time adjusted by Lender on the basis of assessments and bills and reasonable estimates thereof.

The Funds paid to the Lender shall be held by or on behalf of the Lender in trust solely for the purposes indicated. Such deposit as required by this Deed of Trust shall be known as the "Assessments Account", and shall be maintained as a separate account. Lender shall cause all of the Assessments to be promptly paid when and as the same shall become due and payable and all such payments shall be credited to the Assessments Account. If required by applicable law, there shall be credited to the Assessments Account interest thereon at a rate of not less than that required by such law, computed on the average monthly balance accrued in such Assessments Account. If the Assessments Account is transferred to another lender that would otherwise not be required by law to pay such interest if such lender had created the Assessments Account, the Borrower agrees and consents that such lender need not credit interest on the Assessments Account.

If the amount of the funds held by Lender, together with the future monthly installments of Funds payable before the due dates of the Assessments, shall exceed the amount required to pay the Assessments, as they fall due, such excess shall be, at the Borrower's option, either repaid to Borrower or credited to Borrower on monthly installments of Funds or towards the outstanding principal and interest. If the amount of the Funds held by Lender are insufficient to pay the Assessments, as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency within 30 days from the date notice is mailed by Lender to Borrower requesting payment thereof.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 22 hereof the property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately before the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

3.      <u>Application of Payments</u>.  Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first to interest payable on the Note, then to the principal of the Note, then to amounts payable to Lender by Borrower under paragraph 2 hereof, and then to interest and principal on any Future Advances.

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0564, MSA_CE62_27060. Date available 07/31/2008. Printed 10/29/2020.

0027205 565

4.    <u>Late Charge.</u>   If any monthly payment of principal and interest or part thereof is made more than fifteen (15) days after the due date, Borrower shall pay a late charge in an amount equal to four percent (4%) of said late payment.

5.    <u>Charges; Liens.</u>   Borrower shall pay all Assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, in the manner provided under paragraph 2 hereof or, if not paid in such manner, by Borrower making payment, when due, directly to the payee thereof. Borrower shall promptly furnish to Lender all notices of amounts due under this paragraph, and if Borrower shall make payment directly, Borrower shall promptly furnish to Lender receipts evidencing such payments.   Borrower shall promptly discharge any lien which has priority over this Deed of Trust; provided, that Borrower shall not be required to discharge any such lien so long as Borrower shall agree in writing to the payment of the obligation secured by such lien in a manner acceptable to Lender or shall in good faith contest such lien by, or defend enforcement of such lien in, legal proceedings which operate to prevent the enforcement of the lien or forfeiture of the Property or any part thereof.

6.    <u>Hazard Insurance</u>.   Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require and, if the Property is located in an area designated by or on behalf of the United States of America as having specific flood hazards shall also keep such improvements insured against loss by flooding; provided, that at all times the amount of all coverage shall be in an amount at least equal to the original principal amount of the debt secured hereby or 80% of the replacement value of the Property, whichever is greater. Such insurance shall pay in full the amount of any partial or total loss to the full amount of such insurance and shall be otherwise sufficient to prevent the Borrower from being a co-insurer.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld.  All premiums on insurance policies shall be paid in the manner provided under paragraph 2 hereof.

All insurance policies and renewals thereof shall be in form acceptable to Lender and shall include a standard mortgagee clause in favor of and in form acceptable to Lender as its interest may appear.  Lender shall have the right to hold the policies and renewals thereof, and Borrower shall promptly furnish to Lender all renewal notices and all receipts of paid premiums.  If a loss occurs, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

All sums payable under the insurance policies are hereby assigned and shall be paid to Lender, and all sums received by Borrower on account of the policies shall be promptly paid over to Lender.  At the option of Lender, insurance proceeds shall be applied to restoration or repair of the Property damaged, provided such restoration or repair is economically feasible and the security of this Deed of Trust is not thereby impaired, or if such restoration or repair is not economically feasible or if the security of this Deed of Trust would be impaired, the insurance proceeds shall be applied to the sums secured by this Deed of Trust, with the excess, if any, paid to Borrower.  If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

If Borrower fails to pay any insurance premiums when due, Lender may, at its option, pay said premiums on behalf of Borrower, in which case Borrower shall promptly reimburse Lender.  Any amounts so advanced by Lender shall bear interest at the rate stated in the Note and be added to the amount of the debt secured by this Deed of Trust.

Unless Lender and Borrower otherwise agree in writing, any such application of insurance proceeds to principal shall not extend or postpone the due date of the monthly installments referred to in paragraphs 1 and 2 hereof or change the amount of such installments. If under paragraph 22 hereof the Property is acquired by Lender, all right, title and interest of Borrower in and to any insurance policies and in and to the proceeds thereof resulting from

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0565, MSA_CE62_27060. Date available 07/31/2008. Printed 10/29/2020.

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0566, MSA_CE62_27060. Date available 07/31/2008. Printed 10/29/2020.

MHFP-PIRL Program - Purchase Money Deed of Trust
S: msp draft /PIRL-MHFP/DeedofTrust

0027205 566
Page 4

damage to the Property before the sale or acquisition shall pass to Lender to the extent of the sums secured by this Deed of Trust immediately before such sale or acquisition.

7. <u>Mortgage Insurance.</u>  Mortgage insurance is not required.

8. <u>Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments</u>. Borrower shall keep the Property in good repair and permit the Lender or its employees or agents to enter upon and inspect the Property at reasonable times.  Borrower shall make all proper renewals, replacements, and additions to the Property within fifteen (15) days of written notice of a defect from the Lender.  Borrower shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold.  If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, and constituent documents.  If a condominium or planned unit development rider is executed by Borrower and recorded together with this Deed of Trust, the covenants and agreements of such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Deed of Trust as if the rider were a part hereof.

9. <u>Protection of Lender's Security</u>.  If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property including, but not limited to, eminent domain, insolvency, code enforcement, or arrangements or proceedings involving a bankrupt or decedent, then Lender at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums and take such action as is necessary to protect Lender's interest, including, but not limited to, disbursement of reasonable attorney's fees and entry upon the Property to make repairs.

Any amounts disbursed by Lender pursuant to this paragraph 9, with interest thereon, shall become additional indebtedness of Borrower secured by this Deed of Trust.  Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof, and shall bear interest from the date of disbursement at the rate payable from time to time on outstanding principal under the Note unless payment of interest at such rate would be contrary to applicable law, in which event such amounts shall bear interest at the highest rate permissible under applicable law.  Nothing contained in this paragraph 9 shall require Lender to incur any expense or take any action hereunder.

10. <u>Inspection</u>.  Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice before any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

11. <u>Further Covenants by Borrower</u>.  Borrower understands that the debt secured hereby is a preferred interest rate Loan made by the Lender pursuant to the Maryland Home Financing Program ("MHFP").  This Deed of Trust shall be subject to the current regulations of the MHFP, and to its future regulations not inconsistent with the express provisions hereof. Borrower covenants and agrees that all those matters and facts set forth in the Borrower's loan application and all other documents executed in connection with the debt secured hereby are true and correct.  Any misstatement, omission, misrepresentation or violation of any statement made in Borrower's loan application or any other document executed in connection with the debt secured hereby shall constitute a default herein, upon which default Lender may, in addition to all remedies available to it at law or in equity, at its option and without notice or demand to Borrower, declare all sums secured hereby to be immediately due and payable; whereupon, said sums shall become due and payable.  Borrower shall occupy the Property as the Borrower's principal residence and may not use any portion of the Property in any trade or business activity.

12. <u>Condemnation</u>.  The proceeds of any award or claim for damages, direct or consequential, for any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Deed of Trust, with the excess, if any, paid to Borrower.  In the event of a partial taking of the Property, unless Borrower

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0567, MSA_CE62_27060. Date available 07/31/2008. Printed 10/29/2020.

and Lender otherwise agree in writing, there shall be applied to the sums secured by this Deed of Trust such proportion of the proceeds as is equal to that proportion which the amount of the sums secured by this Deed of Trust immediately before the date of taking bears to the fair market value of the Property immediately before the date of taking, with the balance of the proceeds paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date such notice is mailed, Lender is authorized to collect and apply the proceeds, at Lender's option, either to restoration or repair of the Property or to payment of the sums secured by this Deed of Trust.

Unless Lender and Borrower otherwise agree in writing, any such application of proceeds to principal shall not extend or postpone the due date of the monthly installments referred to in paragraphs 1 and 2 hereof or change the amount of such installments.

13.    Borrower Not Released.  Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest.  Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest.

14.    Forbearance by Lender Not a Waiver.  Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.  The procurement of insurance or the payment of taxes or other liens, charges or Assessments by Lender shall not be a waiver of Lender's right to accelerate the maturity of the indebtedness secured by this Deed of Trust.

15.    Remedies Cumulative.  All remedies provided in this Deed of Trust are distinct and cumulative to any other right or remedy under this Deed of Trust or afforded by law or equity, and may be exercised concurrently, independently or successively.

16.    Successor and Assigns Bound; Joint and Several Liability; Captions.  The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to the benefit of, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 20 hereof.  All covenants and agreements of Borrower shall be joint and several.  The captions and headings of the paragraphs of this Deed of Trust are for convenience only and are not to be used to interpret or define the provisions hereof.

17.    Notice.  Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by mailing such notice by certified mail addressed to Borrower at the Property Address or at such  other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail, return receipt requested, to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein.  Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

18.    Governing Law; Severability.  This Deed of Trust shall be governed by the law of the jurisdiction in which the Property is located. If any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of the Deed of Trust and the Note are declared to be severable.

19.    Borrower's Copy.  Borrower shall be furnished a conformed copy of the Note and of this Deed of Trust at the time of execution or after recordation hereof.

20.    Subordinate to First Lien/Cross Default.        The lien of this Deed of Trust shall be subordinate to a first lien securing a loan made or purchased by the Maryland Community Development Administration, an agency

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0568, MSA_CE62_27060. Date available 07/31/2008. Printed 10/29/2020.

within the Division of Development Finance of the Department of Housing and Community Development (the "First Lender") to the Borrower in the approximate amount of $         at an interest rate of         for a term of         years (the "First Loan"). The Borrower agrees that a default under this Deed of Trust shall constitute a default under the First Loan and the First Lender shall have the right to exercise all rights or remedies under the First Loan documents in the same manner as in the case of any other First Loan default.  The Borrower further agrees that default under the First Loan shall constitute a default under this Deed of Trust and Lender shall have the right to exercise all rights or remedies under the this Deed of Trust in the same manner as in the case of any default under this Deed of Trust.

21.    Payment of the First Mortgage; Transfer of the Property.  All the sums secured by this Deed of Trust shall be and become immediately due and payable without notice or demand (A) if all sums due under the First Note and secured by the First Deed of Trust are paid in full or (B) if the Property, or any interest therein, is leased, sold, transferred or otherwise conveyed without the prior consent of the Lender, unless: (i) a transfer is by devise, descent or operation of law upon the death of a joint tenant or tenant by the entirety; or (ii) a transfer is made to a person who occupies or will occupy the Property and the transfer is (a) to a relative upon the death of Borrower, (b) to Borrower's spouse or children, or (c) to a spouse pursuant to divorce, separation, or property settlement agreement; or (iii) a transfer is made into an inter vivos trust in which Borrower is and remains the beneficiary and the occupant of the Property; provided that prior to the transfer, Borrower provides Lender with reasonable means acceptable to Lender by which Lender will be assured of timely notice of any subsequent transfer of beneficial interest or any change in occupancy; or (iv) the Borrower creates a purchase money security interest for a household appliance; or (v) the lease is for three years or less and does not contain an option to purchase; or (iv) Borrower creates a lien which is subordinate to the lien of this Deed of Trust and which does not transfer rights of occupancy in the Property.

22.    Acceleration.    Except as provided in paragraphs 11 and 21 hereof (which paragraphs provide for acceleration by their terms), upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, and upon 10 days written notice, Lender at Lender's option may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand therefore, upon which said sums shall become due and payable.

23.    Remedies.    The Borrower hereby, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including paragraphs 11 and 20 hereof and all covenants to pay when due any sums secured by this Deed of Trust, (a) declares its assent to the passing of a decree for the sale of any or all of the Property or any estate or interest therein by any equity court having jurisdiction over the sale of the Property, and (b) authorized and empowers the Trustee to take possession of any or all of the Property and to sell by one or more sales (or resell in the event of any default by a purchaser at any such sale) any or all of it or any estate or interest therein in accordance with applicable law.   Neither the foregoing assent to decree nor the foregoing power of sale shall be exhausted if such proceeding or sale is dismissed or cancelled before the indebtedness secured hereby is paid in full.  Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 22, including but not limited to, reasonable attorney's fees.

If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail written notice of sale to Borrower in the manner prescribed by applicable law.   Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine.   Immediately upon the first insertion of any advertisement or notice of sale, there shall be and become due and owing by the Borrower all expenses incident to any foreclosure proceeding under this Deed of Trust and a commission on the total amount of the indebtedness then due equal to one-half of the percentage allowed as a commission to trustees making sales under orders or decrees of the equity court having jurisdiction.   Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale.   Lender, or Lender's designee, may purchase the Property at any sale.

Any sale shall be made without regard to any right of the Borrower or any other person to the marshalling of assets.

0027205 569

Trustee shall deliver to the purchaser a Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied.   The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein.   Trustee shall apply the proceeds of the sale in the following order:   (a) to all costs and expenses of the sale, including, but not limited to, Trustee's fees of 5% of the gross sale price, attorney's fees not exceeding 10% of the gross sales price and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

24.    Borrower's Right to Reinstate.   Except for an acceleration by Lender under paragraphs 11 and 20 hereof, for which no right to reinstate shall exist, Borrower shall have the right, notwithstanding Lender's acceleration of the sums secured by this Deed of Trust, to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time before the earlier to occur of (a) the fifth day before sale of the Property pursuant to the power of sale contained in this Deed of Trust or (b) entry of a judgment enforcing this Deed of Trust if:  (i) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (ii) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (iii) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust and in enforcing Lender's and Trustee's remedies as provided in paragraph 22 hereof, including, but not limited to, reasonable attorney's fees; and (iv) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired.  Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

Upon acceleration under this Deed of Trust or upon abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of the Property and take any and all steps the receiver deems necessary and appropriate to protect and preserve the Property.

25.    Future Advances.   Upon request of Borrower, Lender, at Lender's option before release of this Deed of Trust, may make future advances and re-advances ("Future Advances") to Borrower.   Such Future Advances, with interest thereon, shall be secured by this Deed of Trust when evidenced by promissory notes stating that said notes are secured hereby.   At no time shall the principal amount of the indebtedness secured by this Deed of Trust, not including sums advanced in accordance herewith to protect the security of this Deed of Trust, exceed the original amount of the Note.

26.    Estoppel Certificate.   Borrower shall, upon 20 days notice by Lender, furnish a written statement duly acknowledged, of the amount due hereunder, and whether any offsets, counterclaims, or defenses exist with respect to the debt secured hereby.

27.    Release.   Upon payment of all sums secured by this Deed of Trust, Lender or Trustee shall release this Deed of Trust without charge to Borrower.   Borrower shall pay all costs of recordation, if any.

28.    Trustees.

(a)    The Trustees shall have no liability or responsibility for any act or failure to act done in good faith or without willful misconduct or gross negligence.

(b)    Lender at Lender's option may from time to time remove any Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Deed of Trust is recorded.  Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon the Trustee herein and by applicable law.

(c)    Any one Trustee may act for or on behalf of all Trustees.

29.    Further Assurances.   Borrower warrants specially the Property and will execute such further assurance thereof as may be necessary.

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0569, MSA_CE62_27060. Date available 07/31/2008. Printed 10/29/2020.

0027205 570

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust on the day and year first above written.

WITNESS:

By: _____ (SEAL)
Name: **George Thornton, Jr.**

By: _____ (SEAL)
Name: **Jacqueline D. Thornton**

STATE OF MARYLAND, _____ County ss:

    I HEREBY CERTIFY that on this ___ day of _____, 20__, before me the subscriber, a Notary Public of the State of _____ and for the _____ aforesaid, personally appeared _____ and _____, known to me or satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged the foregoing Deed of Trust to be his/her (their) Act.

    AS WITNESS, my hand and notarial seal.

My Commission Expires: _____

Notary Public

STATE OF MARYLAND, _____ County, ss:

    I HEREBY CERTIFY, that on this ___ day of _____, 20__, before me, the subscriber, a Notary Public of the State of _____ and for the County aforesaid, personally appeared _____, the agent of the party secured by this foregoing Deed of Trust, and made oath in due form of law that the consideration recited in said Deed of Trust is true and bona fide as therein set forth and that the actual sum of money advanced at the closing transaction by the secured party was paid over and disbursed by the secured party or parties to the Borrower or to the person responsible for disbursement of funds in the closing transaction or their respective agent at a time no later than the execution and delivery by the Borrower of this Deed of Trust; and also made oath that he/she is the agent of the party or parties secured and is duly authorized to make this affidavit.

    AS WITNESS, my hand and notarial seal.

My Commission Expires: _____

Notary Public

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0570, MSA_CE62_27060. Date available 07/31/2008. Printed 10/29/2020.

0027205 571

MHFP-PIRL Program - Purchase Money Deed of Trust
S: msp draft /PIRL-MHFP/DeedofTrust

Page 9

The undersigned hereby certifies that this Deed of Trust was prepared by or under the supervision of an attorney admitted to practice before the Court of Appeals of Maryland, or by or on behalf of _MDHCD_____, one of the parties named herein.

DATE: 7/2/08

JACK Rause

If the mortgaged property is located in Montgomery County, the Deed of Trust must recite the following:

1.      Parcel Identifier.

2.      County Tax Account Number (if any and if different from the Parcel Identifier).

3.      Record legal description of the boundaries of the parcel.

4.      The street address of the parcel.

5.      The full name and address of each party hereto and the nature of the party's interest.

6.      The name of the title insurer.

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0571, MSA_CE62_27060. Date available 07/31/2008. Printed 10/29/2020.

0027205 572

**EXHIBIT "A"**

**File Number:** ⬛

BEGINNING for the same at a point on the northeast side of Liberty Parkway, said point of beginning situated 36 feet 2 inches southeasterly along the northeast side of Liberty Parkway from the southeast side of Kentway as shown on Block 4 of plat 4 Dundalk (said place of beginning also being in line with the center of the division wall between the properties known as 2641 and 2643 Liberty Parkway) and running thence from the said place of beginning along the northeast side of Liberty Parkway south 20 degrees 22 minutes east 35 feet 5 inches; thence leaving Liberty Parkway and running north 69 degrees 38 minutes east 120 feet to the southwest side of a 14 foot alley there laid out; thence binding on the southwest side of said alley with the use thereof in common north 20 degrees 22 minutes west 35 feet 5 inches to a point in line with the center of the division wall between the properties known as 2641 and 2643 Liberty parkway; thence leaving said alley and running to and through the center of said division wall south 69 degrees 38 minutes west 120 feet to the place of beginning.

THE IMPROVEMENTS THEREON BEING KNOWN AS NO. 2643 LIBERTY PARKWAY.

**Tax ID Number: 12-05-00-0050**

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27205, p. 0572, MSA_CE62_27060. Date available 07/31/2008. Printed 10/29/2020.

Exempt from recordation and transfer taxes under Sections 12-108(a), 13-207(a)(1), and 13-402.1 of the Tax-Property Article of the Maryland Annotated Code.

Bogman Loan Number: ███████

DHCD Loan Number: ████████

After recording please return to:
Department of Housing and Community Development
Single Family Collections
100 Community Place
Crownsville, Maryland 21032

## LOAN MODIFICATION AGREEMENT
## [MHFP - PIRL LOAN]

THIS MODIFICATION IS TO BE EXECUTED IN DUPLICATE ORIGINALS:
ONE ORIGINAL IS TO BE AFFIXED TO THE ORIGINAL NOTE AND
ONE ORIGINAL IS TO BE RECORDED IN THE LAND RECORDS WHERE
THE SECURITY INSTRUMENT IS RECORDED

This Loan Modification Agreement ("Modification"), effective the 1st day of November, 2010, between George Thornton, Jr. (the "Borrower") and the Maryland Department of Housing and Community Development ("Lender"), and Mark S. Petrauskas, Trustee. This Modification amends and supplements (1) the Note and Letter of Agreement (collectively, the "Note") made by the George Thornton, Jr. and Jacqueline D. Thornton (jointly and severally, the "Borrower"), dated July 2, 2008, in the original principal sum of U.S. $30,549.00, and (2) the Deed of Trust (the "Security Instrument"), recorded on July 28, 2008, in Liber 0027205, at Folio 563, of the Land Records of Baltimore County, Maryland. The Security Instrument, which was entered into as security for the performance of the Note, encumbers the real and personal property described in the Security Instrument (and defined in the Security Instrument as the "Property"), located at: 2643 Liberty Parkway Dundalk, Maryland, the real property described as follows:

      SEE THE ATTACHED LEGAL DESCRIPTION, EXHIBIT "A", ATTACHED HERETO
      AND MADE A PART HEREOF.

The Borrower has requested that the Lender modify the terms of the Note and Security Instrument, and the Lender has agreed pursuant to the terms and conditions herein. In consideration of the agreement herein, and other good and valuable consideration, the Borrower and Lender hereby agree to modify the terms of the Note and Security Instrument as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.      The Borrower represents that the Borrower is the occupant of the Property and is one and the individuals who executed the original instruments.

2.      The Borrower acknowledges that unpaid accrued interest, in the total amount of $1,087.90, has been added to the indebtedness under the terms of the Note and Security Instrument, and that as of November 1, 2010, the amount, including the amounts which have been added to the indebtedness, payable under the Note and Security Instrument is U.S. $31,216.64 (the "Unpaid Principal Balance").




MHFP - Loan Modification Agreement
THORNTON, George, Jr., - Loan Mod. - Recast
s/collins/sfassetmanagement/thornton(101510)

Page 2

3.　　(a) The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender.

　　(b) Under the Note, the stated interest rate is 10.25%, which was reduced by the Letter of Agreement to 3.93% (the "Preferred Interest Rate") so long as the Borrower's income does not exceed 55% of HUD statewide median income for a family of four.  Under this Modification, the Preferred Interest Rate under the Letter of Agreement is reduced to 0.500%, so long as the Borrower's income does not exceed 55% of HUD statewide median income for a family of four.  The new Preferred Interest Rate of 0.500% per year will be charged beginning November 1, 2010.

　　(c) The Borrower promises to make monthly payments of principal and interest of U.S. $75.48 beginning on the 1st day of November, 2010, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full.

　　(d) Currently, under the Note, the Maturity Date is August 1, 2048. If on Maturity Date the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Modification, the Borrower will pay these amounts in full on the Maturity Date.

　　(e) The Borrower will make such payments at Bogman, Inc., located at 12301 Old Columbia Pike, Suite 200, Silver Spring, Maryland 20904 or at such other place as the Lender may require.

4.　　The Borrower understands and agrees that the Lender may require the Borrower to provide information to the Lender from time to time concerning the Borrower's income in order to confirm the Borrower's continuing eligibility for the interest rate stated above, as further described in the Letter of Agreement.

5.　　Except as otherwise modified herein, the Borrower will comply with all other covenants, agreements, and requirements of the Note and the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument.

6.　　Nothing in this Modification shall be understood or construed to be a novation, substitution, satisfaction or release in whole or in part of the Note and Security Instrument.  Except as otherwise specifically provided in this Modification, the Note and Security Instrument will remain unchanged and in full effect, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Modification.

　　**In witness whereof**, the parties have executed this Modification below.

**Borrower's Signature and Acknowledgements**

_3  25-11_
Date

_____(SEAL)
George Thornton, Jr.

MHFP - Loan Modification Agreement
THORNTON, George, Jr., - Loan Mod. - Recast
s/collins/sfassetmanagement/thornton(101510)

Page 3

STATE OF MARYLAND, ~~BALTIMORE~~ COUNTY, §:

I HEREBY CERTIFY, that on this **25** day of **MARCH**, 20 **11**, before me the subscriber, a Notary Public of the State of Maryland and for the County aforesaid, personally appeared George Thornton, Jr., known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

AS WITNESS: my hand and notarial seal.

_Thomas S. Breen_
Notary Public

My Commission Expires:
**5-3-2011**

**Lender's Signature and Acknowledgment**
Witness: _Robert J. Wirth_

By: _Jeanne M. Mullen_
Jeanne M. Mullen
Authorized Officer

STATE OF MARYLAND, ANNE ARUNDEL COUNTY, §:

I HEREBY CERTIFY that on this **15th** day of **December**, 20 **10**, before me a Notary Public for the State and County described above, personally appeared Jeanne M. Mullen, known to me or satisfactorily proven to be the person whose name is subscribed to the foregoing instrument, who acknowledged that she is an Authorized Officer of the Maryland Department of Housing and Community Development, that she has been duly authorized to execute, and has executed, such instrument on its behalf for the purposes set forth in it, and that such execution is its act and deed.

IN WITNESS WHEREOF, I have set my hand and Notarial Seal, the day and year first above written.

_Robert J. Wirth_
Notary Public

My Commission Expires:
**4/4/2014**

RICHARD J. WIRTH
NOTARY
My Comm. Expires
4/4/2014
PUBLIC
ANNE ARUNDEL CO., MD

MHFP - Loan Modification Agreement
THORNTON, George, Jr., - Loan Mod. - Recast
s/collins/sfassetmanagement/thornton(101510)

Page 4

**Trustee Signatures and Acknowledgments**

Witness:

By: _____

Mark S. Petrauskas
Trustee

STATE OF MARYLAND, ANNE ARUNDEL COUNTY, §:

I HEREBY CERTIFY that on this 18th day of October, 2010, before me a Notary Public for the State and County described above, personally appeared Mark S. Petrauskas, known to me or satisfactorily proven to be the person whose name is subscribed to the foregoing instrument, who acknowledged that he has executed such instrument as Trustee for the purposes set forth in it, and that such execution is his act and deed.

IN WITNESS WHEREOF, I have set my hand and Notarial Seal, the day and year first above written.

Notary Public  Commissioned as
Angela Collins

My Commission Expires:
4.4.2012

**ATTORNEY CERTIFICATION**

This is to certify that this Modification has been prepared by or under the supervision of Mark S. Petrauskas, an attorney admitted to practice before the Court of Appeals of Maryland.

Mark S. Petrauskas

MHFP - Loan Modification Agreement
THORNTON, George, Jr., - Loan Mod. - Recast
s/collins/sfassetmanagement/thornton(101510)

Page 5

## EXHIBIT A
## PROPERTY DESCRIPTION

BEGINNING for the same at a point on the northeast side of Liberty Parkway, said point of beginning situated 36 feet 2 inches southeasterly along the northeast side of Liberty Parkway from the southeast side of Kentway as shown on Block 4 of plat 4 Dundalk (said place of beginning also being in line with the center of the division wall between the properties known as 2641 and 2643 Liberty Parkway) and running thence from the said place of beginning along the northeast side of Liberty Parkway south 20 degrees 22 minutes east 35 feet 5 inches; thence leaving Liberty Parkway and running north 69 degrees 38 minutes east 120 feet to the southwest side of a 14 foot alley there laid out; thence binding on the southwest side of said alley with the use thereof in common north 20 degrees 22 minutes west 35 feet 5 inches to a point in line with the center of the division wall between the properties known as 2641 and 2643 Liberty parkway; thence leaving said alley and running to and through the center of said division wall south 69 degrees 38 minutes west 120 feet to the place of beginning.

THE IMPROVEMENTS THEREON BEING KNOWN AS NO. 2643 LIBERTY PARKWAY.

**Tax ID Number: 12-05-00-0050**

Maryland Home Financing Program
Second Mortgage Loan
(Owner-occupied)



## DEED OF TRUST NOTE/PROMISSORY NOTE

Date: **July 2, 2008**

Borrower(s): **George Thornton, Jr. and Jacqueline D. Thornton**

Loan No.:  _____

Property Address: **264 Liberty Parkway**

**Dundalk, Md. 21222**

**1.      Borrower's Promise to Pay**

In return for a loan that I have received (the "Loan"), I promise to pay **Thirty Thousand Five Hundred Forty Nine Dollars ($30,549.00)** (this amount is called "principal"), or as much as is advanced, plus interest, to the order of Lender.  The Lender is the Department of Housing and Community Development of the State of Maryland, which has its principal office at 100 Community Place, Crownsville, Maryland 21032.  The term Lender also refers to anyone who takes this Note by transfer and who is entitled to receive payments under this Note.

**2.      Interest**

I will pay interest at a yearly rate of **3.939%** (the "Interest Rate").

**3.      Payments**

(a)      The undersigned further promises and agrees as follows:  Principal and interest shall be payable in single consecutive monthly installments of **One Hundred Twenty-Six Dollars and Fifty-Two Cents ($126.52)** each on the first day of each month beginning **September, 2008**.  These monthly installments shall continue until the indebtedness evidenced by this Note is fully paid.  In any event, the balance of principal, if any, remaining unpaid, plus accrued interest, shall be due and payable on **August 2048**.

(b) I will send all required payments in lawful money of the United States to Maryland DHCD, c/o **Bogman, Inc., 12301 Old Columbia Pike, Suite 200, Silver Spring, Maryland 20904-1656** or any other place designated by the Lender.

4.      **Transfer of Property**

(a)      All sums under this Note shall immediately be and become due and payable without notice or demand upon the lease, sale, assignment, or other transfer of the Property or any portion of the Property or any interest in the Property unless:

(i)      the lease is for a residential unit other than the Borrower's; or

(ii)      the lease is for the Borrower's residential unit but the lease term is for 3 years or less; or

(iii)      a transfer is by devise, descent or operation of law upon the death of a joint tenant or tenant by the entirety; or

(iv)      a transfer is made to a person who occupies or will occupy the Property and the transfer is

(1)      to a relative upon the death of Borrower,

(2)      to Borrower's spouse or children, or

(3)      to a spouse pursuant to divorce, separation, or property settlement agreement; or

(v)      a transfer is made into an inter vivos trust in which Borrower is and remains the beneficiary and the occupant of the Property; provided that prior to the transfer, Borrower provides Lender with reasonable means acceptable to Lender by which Lender will be assured of timely notice of any subsequent transfer of beneficial interest of any change in occupancy; or

(vi)      the Borrower creates a purchase money security interest for a household appliance.

5.      **Prepayment of Superior Loan**

All sums under this Note shall immediately be and become due and payable without notice or demand upon the prepayment of Borrower's first mortgage loan made or purchased by the Maryland Community Development Administration, an agency within the Division of Development Finance of the Department of Housing and Community Development (the "First Lender") to the Borrower in the approximate amount of **$122,194.00** at an interest rate of **5.875%** for a term of **40** years (the "First Loan").

6.      **Escrow Payments**

Unless the following payments are required to be paid a superior lien holder, I will be required, in addition to the payments described in Section 3 above, to pay installments of taxes and assessments, property insurance premiums, condominium or homeownership fees (if any), and ground rent (if any) as required in the Deed of Trust.

### 7.    Late Charges and Lender's Costs

I will also pay a "late charge" equal to 4 percent of any monthly payment of principal and interest required by this Note if such payment is made more than 15 days after the due date.  I will also pay costs of collection including a reasonable attorney's fee if this Note is referred to any attorney for collection after default.

### 8.    Prepayments

I may prepay this Note in part or in whole at any time without incurring any prepayment penalty.  Any prepayment of less than the full unpaid principal amount of this Note will be applied to the next monthly installment due, unless I request in writing that the prepayment be applied in a different manner.

### 9.    Deed of Trust and Other Loan Documents

This Note is secured by Deed of Trust, dated the same day as this Note to Mark S. Petrauskas and Anthony J. Mohan, as trustees, in the same original principal amount stated in Paragraph 1 above.  The Deed of Trust imposes additional obligations on me.  The Deed of Trust provides additional protection to the Lender if I fail to keep promises I made in the Note or in the Deed of Trust, or other loan documents described in the Deed of Trust.  The Deed of Trust describes how and under what circumstances I may be required to make immediate payment in full of all amounts I owe under this Note.

### 10.    Default

If I fail to make any payment under this Note or any other loan secured by my residence when due, or upon any other event of default under any covenant or provision of this Note or under the First Loan, the entire unpaid principal amount with accrued interest will at once become due and payable without notice, at the option of the Lender.  Failure of the Lender to exercise this option will not constitute a waiver of the right to exercise the option in the event of any subsequent default.

### 11.    Borrower's Waiver

I waive diligence, presentment for payment, demand, protest, notice of protest, and notice of dishonor, and I expressly agree that the maturity of this Note, or any payment under it, may be extended from time to time without in any way affecting my liability.

### 12.    Responsibility of Borrowers

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note.  Any guarantor, surety, or endorser of this Note is also obligated to do these things.  The Lender may enforce its rights under this Note against each of us individually or against all of us together, and any one of us may be required to pay all of the amounts owed under this Note.

13.     **Capital Letters; Headings**

Instructions on how to fill out this Note are in capital letters.  Headings for Sections of the Note are not intended to limit the terms of the Note.

**IN WITNESS WHEREOF,** I have executed this Note under Seal on the date shown above.

WITNESS:                                         BORROWER(S):

_____                 X_____(SEAL)
                                                 Name: George Thornton, Jr.

_____                 _____(SEAL)
                                                 Name: Jacqueline D. Thornton